**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| Integrated Process Solutions, Inc., | Court File No.: _____ |
| | Hon. _____ |
| Plaintiff, | |
| vs. | |
| Lanix LLC, Kevin Landsverk, and Dylan Dyke, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Integrated Process Solutions, Inc, ("IPS") for its Compliant against Defendants Lanix LLC ("Lanix"); Kevin Landsverk ("Landsverk"); and Dylan Dyke ("Dyke") (collective "Defendants"), states and alleges as follows:

## I.   INTRODUCTION

1.   This is an action by IPS against its former employee, Landsverk, and his new, competing business, Lanix. IPS seeks injunctive relief and money damages to remedy Defendants' unlawful acts, which include breach of fiduciary duties and duty of loyalty; violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; misappropriation of trade secrets under the Minnesota Uniform Trade Secrets Act ("MUTSA") and the Defendant Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836(b)(1); civil conspiracy; and unjust enrichment.

## II.   PARTIES

2.   Plaintiff IPS is Minnesota corporation with its corporate headquarters and principal place of business located at 34696 412 St. SE, Fosston, Minnesota.

3. Defendant Lanix, LLC is a Minnesota Limited Liability Company with its headquarters and principal place of business located at 3800 American Blvd. W, Suite 1500, Bloomington, Minnesota.

4. Upon information and belief, Defendant Kevin Landsverk is a resident of Minnesota. Landsverk is former employee of IPS and, upon further information and belief, is now the founder and sole owner of Defendant Lanix.

5. Upon information and belief, Defendant Dylan Dyke is a resident of Minnesota and a current Systems Engineer employee of Corval Group, Inc. ("Corval").

### III.   JURISDICTION AND VENUE

6. This Court has personal jurisdiction over each Defendant because each of them resides and/or regularly conducts business in Minnesota. Each Defendant has or should have anticipated and foreseen it would be subject to this Court's jurisdiction.

7. This Court has federal question jurisdiction over this case pursuant to the Computer Fraud and Abuse Act, and the Defendant Trade Secrets Act of 2016. This Court has supplemental jurisdiction over IPS's remaining claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2). Each and every Defendant resides in Minnesota and the wrongful and unlawful acts that have resulted in injury to Plaintiff occurred in Minnesota.

### IV.   FACTS

**A.   IPS's Business**

9. Since its founding in 2008, IPS has designed, built, implemented, and

integrated electrical control systems in Minnesota, Wisconsin, and other parts of the Midwest.

10. IPS's goods and services are often put to use by large entities, including but not limited to industrial or municipal operators of water and waste-water systems. But IPS typically does not have a direct commercial relationship with these large entities. Instead, IPS most often collaborates with general contractors, builders, or other manufacturing companies that are responsible for the project that will include IPS's goods or services. In other words, IPS typically plays a role similar to that of a sub-contractor.

**B.    Landsverk's Employment at IPS**

11. On June 17, 2013, IPS offered Landsverk a full time position as a Design & Field Engineer. In that capacity, Landsverk was responsible for learning and utilizing the following areas of substantive knowledge: (a) IPS's system drawings, (b) AutoCAD programming, (c) operator interface programming, (d) human machine interface configuration and programming, (e) radio telemetry, (e) network switches; access control systems; (f) surveillance and IP camera systems, (g) instrumentation, (h) motor control, (i) variable frequency drives, and (j) process controls for the water/wastewater industry.

12. Nonetheless, because of its size, IPS expects many of its employees to perform a wide range of duties. Consistent with this policy and practice, the scope of Landsverk's duties increased over the course of his tenure at IPS. Indeed, by the time he departed IPS, Landsverk worked as a *de facto* IT specialist, salesperson, and project manager in addition to his original duties as a field engineer. Landsverk was a valuable

4842-3663-1432

and integral member of IPS.

13. By virtue of his position, for at the very least a year prior to his departure from IPS on February 9, 2019, Landsverk had intimate knowledge of the following critical pieces of information regarding IPS and its business:

- The business and contractual nature of IPS's relationship with its customers;

- The key contacts at various IPS customers;

- The amount of money IPS collected pursuant to at least some of the contracts it had with its customers;

- The costs to IPS of completing and delivering its goods and services to its customers;

- IPS's process for bidding for specific goods or services;

- The location and organization of IPS's IT systems, including but not limited to hardware, software, databases, information repositories, and enterprise resource planning systems;

- Software, programming, and other control codes that IPS uses in its systems; and

- The key skills, talents, and competencies of various individuals at IPS as well as their approximate compensation.

14. IPS took and continues to take reasonable steps to protect the confidentiality of some and/or all of this information. IPS took and continues to take such steps because it derives a competitive and, therefore, economic advantage simply by keeping some and/or all of that information confidential.

15. Through significant time and investment, IPS has developed substantial goodwill in the relationships it has developed with its customers. Landsverk developed special relationships with IPS's customers with whom he worked while employed by IPS.

4

Those relationships were developed solely at IPS's expense, in Landsverk's capacity as an IPS employee, and on IPS's behalf. Landsverk was the face of IPS with certain customers.

16. IPS takes significant steps to maintain the confidentiality of its proprietary and confidential information, including, but not limited to, limiting access to its offices and computer systems; and requiring employees to use computer passwords.

17. Because IPS is headquartered in Minnesota but does work across the Midwest, it develops, creates, uses, transmits, and relies on some and/or all of this information in connection with interstate transactions and commerce.

### C. Landsverk & Dyke Conspire to Harm IPS

18. By virtue of his position, Landsverk came into contact and developed a relationship with Dyke, a system engineer at one of IPS's customers, Corval.

19. Over the course of their professional relationship, Landsverk and Dyke bonded over what they believed was inadequate remuneration for all their work. In particular, Dyke believed he should have been compensated for directing Corval's work to Landsverk (and, therefore, to IPS) and Landsverk believed he was entitled to higher pay for bringing in Corval work.

20. With dissatisfaction mounting, Landsverk and Dyke agreed to conspire against IPS to IPS's confidential and trade secret information to begin competing with IPS while Landsverk was still employed by IPS. For instance, Landsverk told Dyke that IPS President Peter Nelson "came and asked me about upcoming opportunities. He got all excited and I saw something with the financial guy that he depends on our work now to

hit sales numbers." And immediately thereafter told Dyke that it "[w]ould be so fun to pull all these opportunities away from him."

21.     While still employed with IPS, Landsverk opened his own company to rival IPS. This company came to be named Lanix, LLC. Landsverk filed the papers to organized the LLC on January 23, 2019, over two weeks before he announces his resignation.

22.     Dyke withheld Corval work from IPS and instead steered it toward Landsverk (and, therefore, Lanix). In exchange, Landsverk (and Lanix) promised to give Dyke a percentage of the profits made on each such project at Lanix.

23.     For example, Landsverk told Dyke, "Fuuuuck. Dude we gotta do this one ourselves. Could pocket like 10g each on top of fair profit." Dyke later told Landsverk, "I'll hold all other Pos to IPs, you can work on those on your own before Pos at Lanix." For example, Landsverk told Dyke, "Fuuuuck. Dude we gotta do this one ourselves. Could pocket like 10g each on top of fair profit." Dyke later told Landsverk, "I'll hold all other Pos to IPs, you can work on those on your own before Pos at Lanix."

24.     Notably, however, for this kick-back scheme to work, Lanix had to be a viable company capable of performing the work that Dyke was going to send in its direction. This required Landsverk and Lanix to misappropriate the confidential, proprietary, and trade secret information of IPS for Lanix's benefit.

25.     Landsverk retained in his possession after his employment with IPS ended confidential and proprietary information belonging to IPS.  Upon information and belief, Landsverk has used this information to his own and Lanix's benefit to unlawfully

6

compete with IPS.

26. Through Landsverk's special IT responsibilities for IPS, Landsverk set up a computer server at his home to create a back-up copy of all of IPS's electronically stored information. This server gave Landsverk continuing access to IPS's information necessary to perform the work that IPS performs. Landsverk bragged to Dyke that he had left himself "several routes to get back into" IPS's computer systems even if his electronic access was disabled.

27. Landsverk misappropriated IPS's confidential AutoCAD (computer assisted drafting) files, drawings, project management files, and all the proprietary information used to create such files. These drawings and files provide IPS a competitive advantage over IPS's competitors. IPS derives value from these drawings and files not being generally known by third parties, and are subject to reasonable efforts to maintain their secrecy.

28. Using his personal email account (in order to hide it from IPS), Landsverk misappropriated IPS's financial documents. These documents provide IPS a competitive advantage over IPS's competitors. IPS derives value from these documents not being generally known by third parties, and are subject to reasonable efforts to maintain their secrecy.

29. In other words, Landsverk needed to raid all of the knowledge, expertise, talent, and financial information from IPS and use it as his own. Upon information and belief, Landsverk did so with the help of Dyke. Furthermore, upon information and belief, Landsverk did all of this for personal financial gain and to the detriment, financial

7

and otherwise, of IPS.

30. At all relevant times, Landsverk and Dyke were aware that their actions were wrongful and unlawful.

31. IPS is not currently aware of the full extent of the conduct of Landsverk and/or others in violation of their obligations to IPS and the harm it has suffered as a consequence of Defendants' conduct.

32. IPS has been and will continue to be irreparably harmed by Defendants' wrongful conduct, including continued breaches of valid obligations to C.H. Robinson, and misuse of C.H. Robinson's confidential and trade secret information. These are injuries that cannot be fully compensated monetarily, and IPS does not have an adequate remedy at law for Defendants' wrongful and unlawful conduct.

**D.    Spoliation of Evidence: Landsverk Wipes His Drives**

33. Upon resignation, Landsverk turned in all of his work-issued devices, including a desktop computer, a laptop computer, an iPad, and a Samsung mobile phone. Landsverk also provided his login credentials for a Microsoft Office 365 cloud account.

34. Unbeknownst to IPS, immediately before he announced his resignation, Landsverk attempted to permanently delete all of the contents of his work-issued devices, including his IPS-based email account, as well as the associated IPS cloud-based storage account. IPS was able to recover from Landsverk's IPS email account only seven emails dated prior to January 24, 2019, and the earliest email recovered is from April 16, 2018.

35. The absence of any other relevant emails or data is contrary to IPS's data-retention policies, especially because some information must be retained in order fulfill

warranty obligations and other contractual duties.

36. Landsverk knowingly deleted information from all of his work-issued devices and/or cloud accounts in order to destroy evidence of his wrongful conduct.

## V.     COUNTS

### COUNT I

**BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY**
**(Against Landsverk)**

37. IPS realleges and incorporates by reference the matters previously set forth in this Complaint.

38. Landsverk owed fiduciary duties and duties of loyalty to IPS by reason of the scope of his duties at IPS.

39. Among other things, Landsverk had a fiduciary duty (1) to keep secret, and not to use, IPS's confidential and proprietary information, including systems, databases, drawings, and financial details for bids and costs; (2) not to solicit or try to solicit IPS's employees to other companies or encourage them to resign; and (3) not to solicit or attempt to solicit IPS's customers or prospective customers for his benefit or the benefit of Lanix or Dyke.

40. Landsverk similarly owed IPS a duty of loyalty to which required him to act in IPS's best interests and, in particular, to take actions to bring business to IPS and not to steer business away from IPS.

41. Landsverk breached his fiduciary duties and duties of loyalty to IPS by (a) using IPS's confidential and proprietary information for his own personal gain,

(b) soliciting IPS employees, (c) soliciting IPS current and prospective customers, and (d) steering business away from IPS all while still employed at IPS.

42.     Landsverk must return to IPS any compensation or benefits each received as a result of the breaches of fiduciary duties and duties of loyalty, and compensation or benefits he continued to receive during the time he was in breach.

43.     As a direct and proximate result of Landsverk's breaches, IPS has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage, and will continue to suffer said injury, loss, harm, or damage, unless and until Landsverk is restrained from his present conduct.

44.     As a direct and proximate result of Landsverk's breaches, IPS has suffered additional damages, which continue to accrue, including, without limitation, attorneys' fees and costs related to this litigation and lost business and profits.

45.     Landsverk acted with the deliberate, malicious, and/or reckless disregard of the rights of IPS and others by (a) having knowledge of facts and/or intentionally disregarding facts that created a high probability of injury to the legal rights of IPS and others, and (b) deliberately proceeding to act in conscious or intentional disregard for the high probability of injury to the rights of IPS or with indifference to the high probability of injury to the rights of IPS.  Accordingly, IPS will seek an award of punitive damages in accordance with Minnesota Statutes §§ 549.191 & 549.20, based on Landsverk's deliberate disregard for the rights of IPS.

## COUNT II

## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF DEFEND TRADE SECRETS ACT OF 2016, 18 U.S.C. § 1836(b)(1)
**(Against All Defendants)**

46. IPS realleges and incorporates by reference the matters previously set forth in this Complaint.

47. As a result of his employment with IPS, and in particular as a result of his position of responsibility as salesperson, IT manager, project manager, and engineer, Landsverk developed, used, received, and had knowledge of the trade secrets of IPS. The information that Landsverk developed, used, received, and had knowledge of includes without limitation: IPS's drawings; IPS's AutoCAD files; IPS's project management processes; the technical information upon which IPS relied to create its goods and offer its services; IPS's goods; IPS's financial information, including cost of manufacturing goods and providing services, salaries and other compensation for IPS employees, profit margins for goods and services; IPS's IT capabilities and security; IPS's customer lists and contacts; and IPS's quote/bid process.

48. These trade secrets have independent economic value, are not generally known to or readily ascertainable by persons outside of IPS and provide IPS with an economic and competitive advantage in the marketplace.

49. IPS has made and continues to make reasonable efforts to maintain the secrecy of its trade secrets.

50. Defendants have wrongfully acquired, disclosed and/or used trade secrets of IPS, and continue to do so, without the express or implied consent of IPS, for their

11

own benefit and the benefit of others.

51.    Defendants' misappropriation was and continues to be willful, wanton, and malicious, and taken with reckless disregard of the rights of IPS.

52.    The public policy in favor of the protection of IPS's interest in maintaining its trade secrets outweighs any interest Defendants allegedly may have in using IPS's trade secrets to support themselves in other employment.

53.    Upon information and belief, Defendants conspired to misappropriate IPS's trade secrets, and Defendants' wrongful acts were taken in furtherance of that conspiracy, resulting in damage to IPS.

54.    As a direct and proximate result of Defendants' misappropriation of IPS's trade secrets, IPS has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage, and will continue to suffer said injury, loss, harm, or damage, unless and until Defendants are restrained from their continued misappropriation of trade secrets.

55.    As a direct and proximate result of Defendants' misappropriation of IPS's trade secrets, IPS has suffered additional damages, which continue to accrue, including, without limitation, attorneys' fees and costs related to this litigation and lost business and profits.

## COUNT III

**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF MINNESOTA UNIFORM TRADE SECRETS ACT, M.S.A §§ 325.01-.08**
**(Against All Defendants)**

56.    IPS realleges and incorporates by reference the matters set forth in this

Complaint.

57. As a result of his employment with IPS, and in particular as a result of his position of responsibility as salesperson, IT manager, project manager, and engineer, Landsverk developed, used, received, and had knowledge of the trade secrets of IPS. The information that Landsverk developed, used, received, and had knowledge of includes without limitation: IPS's drawings; IPS's AutoCAD files; IPS's project management processes; the technical information upon which IPS relied to create its goods and offer its services; IPS's goods; IPS's financial information, including cost of manufacturing goods and providing services, salaries and other compensation for IPS employees, profit margins for goods and services; IPS's IT capabilities and security; IPS's customer lists and contacts; and IPS's quote/bid process.

58. These trade secrets have independent economic value, are not generally known to or readily ascertainable by persons outside of IPS and provide IPS with an economic and competitive advantage in the marketplace.

59. IPS has made and continues to make reasonable efforts to maintain the secrecy of its trade secrets.

60. Defendants have wrongfully acquired, disclosed and/or used trade secrets of IPS, and continue to do so, without the express or implied consent of IPS, for their own benefit and the benefit of others.

61. At all relevant times, Defendants knew or had reason to know that the trade secrets they acquired, disclosed, and/or used were wrongfully acquired, disclosed, or used. Defendants' misappropriation was and continues to be willful, wanton, and

malicious, and taken with reckless disregard of the rights of IPS.

62. The public policy in favor of the protection of IPS's interest in maintaining its trade secrets outweighs any interest Defendants allegedly may have in using IPS's trade secrets to support themselves in other employment.

63. Upon information and belief, Defendants conspired to misappropriate IPS's trade secrets, and Defendants' wrongful acts were taken in furtherance of that conspiracy, resulting in damage to IPS.

64. As a direct and proximate result of Defendants' misappropriation of IPS's trade secrets, IPS has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage, and will continue to suffer said injury, loss, harm, or damage, unless and until Defendants are restrained from their continued misappropriation of trade secrets.

65. As a direct and proximate result of Defendants' misappropriation of IPS's trade secrets, IPS has suffered additional damages, which continue to accrue, including, without limitation, attorneys' fees and costs related to this litigation and lost business and profits.

**COUNT IV**

**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**
**(Against Landsverk)**

66. IPS realleges and incorporates by reference the matters set forth in this Complaint.

67. The Computer Fraud and Abuse Act ("CFAA") permits any person who

suffers damage or loss by reason of activity prohibited by this federal statute to bring a civil action for damages and injunctive relief.

68. IPS is involved in interstate commerce and its computer network, accessed by employees in many states, is also used for interstate commerce. As such, IPS's computers are "protected computers" under the CFAA.

69. Landsverk intentionally retained unauthorized access to IPS's computer network for the purpose of obtaining things of value, including without limitation some or all of the confidential and proprietary information described above. Landsverk engaged in this wrongful conduct knowingly and with the intention of defrauding IPS for his personal gain and that of others, including Lanix and Dyke. Specifically, Landsverk knowingly retained unauthorized access to IPS's servers with the intent of stealing IPS trade secrets in order to assist Lanix gain a competitive advantage over IPS.

70. By the acts described above, Landsverk damaged IPS in an amount exceeding $5,000, which includes, but is not limited to, the cost of investigating the wrongdoing, responding to the offenses, conducting a damage assessment, attorneys' fees and legal costs associated with the investigation and response thereto.

71. As a direct and proximate result of Landsverk's actions, IPS has suffered and continues to suffer, immediate and irreparable injury, loss, harm or damage, and will continue to suffer said injury, loss, harm or damage, unless and until Defendants are restrained from their present conduct.

72. As a direct and proximate result of the Landsverk's actions, IPS has suffered additional damages, which continue to accrue, including, without limitation,

4842-3663-1432

attorney's fees and costs related to this litigation.

## COUNT V

### INDUCING, AIDING, AND ABETTING BREACH
### (Against Dyke)

73. IPS realleges and incorporates by reference the matters set forth in this Complaint.

74. Dyke knew or had reason to know that his actions, as well as those of Landsverk and Lanix, constituted a breach of the obligations that Landsverk had to IPS, including his statutory and/or common law duties.

75. Nonetheless, Dyke substantially induced, assisted, and/or encouraged Landsverk's breach of his agreements with and duties to IPS.

76. As a direct and proximate result of Dyke's inducing, aiding and abetting breaches, IPS has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage, and will continue to suffer said injury, loss, harm, or damage, unless and until Dyke is restrained from their wrongful conduct.

77. As a direct and proximate result of Dyke's inducing, aiding and abetting breaches, IPS has suffered additional damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business.

78. Defendants acted with the deliberate, malicious, and/or reckless disregard of the rights of IPS and others by (a) having knowledge of facts and/or intentionally disregarding facts that created a high probability of injury to the legal rights of IPS and others, and (b) deliberately proceeding to act in conscious or intentional disregard for the

4842-3663-1432

high probability of injury to the rights of IPS or with indifference to the high probability of injury to the rights of IPS. Accordingly, IPS will seek an award of punitive damages in accordance with Minnesota Statutes §§ 549.191 & 549.20, based on Defendants' deliberate disregard for the rights of IPS.

## COUNT VI

## CIVIL CONSPIRACY
### (Against All Defendants)

79. IPS realleges and incorporates by reference the matters set forth in this Complaint.

80. Defendants worked joint to accomplish the unlawful purpose of violating Landsverk's statutory or common law duties to IPS and/or violating various statutory provisions regarding trade secrets and/or computer fraud.

81. Additionally, Defendants worked jointly to compete against IPS by unlawfully taking confidential, proprietary, and protected information from IPS.

82. Defendants' actions constitute a conspiracy in violation of the law.

83. As a direct and proximate result of Defendants' unlawful conspiracy, IPS has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage, and will continue to suffer said injury, loss, harm, or damage, unless and until Defendants are restrained from their wrongful conduct.

84. As a direct and proximate result of Defendants' unlawful conspiracy, IPS has suffered additional damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business.

## COUNT VII

## UNJUST ENRICHMENT
### (Against All Defendants)

85. IPS realleges and incorporates by reference the matters set forth in this Complaint.

86. Defendants have received and retained one or more benefits as a result of their wrongful conduct, including but not limited to monetary gains associated with additional work. Defendants have not only knowingly accepted such benefits, they actively conspired to generate and receive such benefits.

87. The benefits that Defendants have received and retained as a result of their wrongful conduct come at the expense of IPS. Indeed, as a direct and proximate result of Defendants' unlawful conduct, IPS has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage, and will continue to suffer said injury, loss, harm, or damage, unless and until Defendants are restrained from their wrongful conduct.

88. As a direct and proximate result of Defendants' unlawful conspiracy, IPS has suffered additional damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business.

89. Accordingly, it would be inequitable for Defendants to retain the benefits of their wrongful conduct without paying IPS for it.

90. Defendants acted with the deliberate, malicious, and/or reckless disregard of the rights of IPS and others by (a) having knowledge of facts and/or intentionally disregarding facts that created a high probability of injury to the legal rights of IPS and

others, and (b) deliberately proceeding to act in conscious or intentional disregard for the high probability of injury to the rights of IPS or with indifference to the high probability of injury to the rights of IPS.  Accordingly, IPS will seek an award of punitive damages in accordance with Minnesota Statutes §§ 549.191 & 549.20, based on Defendants' deliberate disregard for the rights of IPS.

## VI.   PRAYER FOR RELIEF

**WHEREFORE**, IPS prays for judgment as follows:

(A)   A temporary restraining order immediately ordering Defendants to comply with their legal obligations and ordering expedited discovery and preservation of evidence, and after notice and a hearing, preliminary injunctive relief enjoining Defendants from further breaching their duties toward IPS;

(B)   For actual damages, the precise amount to be proven at trial;

(C)   For IPS's attorneys' fees and costs incurred herein; and

(D)   For such other and further relief as the Court deems just and proper.

## VII.   REQUEST FOR JURY DEMAND

Please take notice that Plaintiff IPS demands a jury trial in this matter.

|  |  |
|---|---|
|  | NILAN JOHNSON LEWIS PA |
| Dated: March 7, 2019 | By:  */s/ Joel O'Malley* <br> Joel O'Malley (Reg. No. 0352573) <br> Pablo Orozco (Reg. No. 0396811) <br> 120 South Sixth Street, Suite 400 <br> Minneapolis, MN 55402 <br> Phone: 612-305-7500 <br> Fax: 612-305-7501 <br> jomalley@nilanjohnson.com <br> porozco@nilanjohnson.com <br><br> ATTORNEYS FOR PLAINTIFF |

4842-3663-1432