# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Integrated Process Solutions, Inc., | Court File No.: 19-cv-00567 |
| Plaintiff, | Hon. _____ |
| vs. | **DECLARATION OF JOEL O'MALLEY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, AND PRESERVATION OF EVIDENCE** |
| Lanix LLC, Kevin Landsverk, and Dylan Dyke, | |
| Defendants. | |

Joel O'Malley, being first duly sworn, declares as follows:

1.      I am an attorney with the law firm of Nilan Johnson Lewis PA, counsel for Plaintiff Integrated Process Solutions, Inc., ("IPS") in this action. I submit this declaration in support of IPS's motion for TRO.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the discovery requests IPS would like to serve on Defendants on an expedited basis.

3.      On February 27, 2019, I emailed defendant Kevin Landsverk ("Landsverk") a cease and desist letter. The letter requested that Landsverk immediately cease wrongfully competing against IPS, including but not limited to refraining from taking, using, or sharing IPS's trade secrets and proprietary information for personal gain. Attached hereto as **Exhibit B** is a true and correct copy of the letter.

4.      On the same day, I also sent Landsverk a hardcopy of the same letter via overnight delivery. On February 28, 2019, I received confirmation from the mail carrier that the hardcopy of the letter had been successfully delivered and received by

Landsverk.

5.    On March 6, 2019, Mr. Scott Payzant responded to my letter on behalf of Landsverk. He avoided responding directly to the allegations, and refused to provide the relief requested in my letter. A true and correct copy of Mr. Payzant's response is attached hereto as **Exhibit C**.

6.    On or about March 7, 2019, inf accordance with the requirements of Rule 65, I sent Mr. Payzant and Dylan Dyke an email giving them notice of IPS's pleadings, motion for a temporary restraining order, and all related documents. A true and correct copy of that email (without the attachments) is attached hereto as **Exhibit D**.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct based upon my personal knowledge, except as otherwise stated.

Dated: March 7, 2019                    _____*/s/ Joel O'Malley*_____
                                                        Joel O'Malley

4811-7734-5416

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Integrated Process Solutions, Inc.,

        Plaintiff,

vs.

Lanix LLC, Kevin Landsverk, and Dylan Dyke,

        Defendants.

Court File No.: _____
Hon. _____

**PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS LANIX LLC, KEVIN LANDSVERK, AND DYLAN DYKE**

**PLEASE TAKE NOTICE** that, pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure and the Court's order authorizing expedited discovery, Plaintiff Integrated Process Solutions, Inc. requests that Defendants Lanix LLC, Kevin Landsverk, and Dylan Dyke each respond to the following Interrogatories and Requests within seven (7) calendar days from the date of service or such other deadline set by Court order.

These Interrogatories and Requests are deemed to be continuing. Should Defendants, or any of them, obtain any other documents or information which would supplement or modify the documents or information supplied in response to these Interrogatories and Requests, Defendants are directed pursuant to Rule 26 to give timely notice of such documents and information and to furnish the additional documents and/or information to IPS without delay.

**Objection will be made at the time of trial to any attempt to introduce evidence which is directly sought by these Interrogatories and Requests and to which no disclosure has been made.**

# DEFINITIONS AND INSTRUCTIONS

1.     "Document" shall have the meaning set forth in Fed. R. Civ. P. 34 and shall refer to the original and all non-identical copies or reproductions of any written, printed, typed, or recorded matter of any kind known to you or in your possession, custody, or control, including but not limited to:

    (a)     All letters, correspondence, memoranda, telegrams, writings, emails, electronic communications, instructions, calendars, desk books, records, reports, charts, studies, surveys, speeches, pamphlets, notes, drafts, proposals, minutes of meetings, microfiche, microfilm, drawings, audiotapes, audio visual tapes, books, papers, computations, tabulations, accounting records, inter-office and intra office communications, electronic mail communications, schedules, lists, specifications, ledgers, journals, diaries, checks, records, recordings or memoranda of conversations or any other written, printed, typewritten or other graphic or photographic matter or tangible thing on which any words or phrases are affixed, all mechanical, electronic, sound or video records or transcripts thereof, all magnetic records or matter existing in any other machine readable form, however produced or reproduced, tape or other voice records of conferences, telephone conversations, or other communications and drafts of any of the foregoing;

    (b)     Computer software, files, drives, disks, diskettes, and tapes, and any hard copies of the information stored thereon;

    (c)     All copies of such documents upon which appear any initialing, notation or handwriting of any kind not appearing on the original, whether such documents were prepared by agents or representatives of Kaiser or Schwing for their own use or for transmittal in any manner, or were received by them.

The term applies to documents wherever located, whether in the files of any representative of Defendants or in any file whatsoever in the possession or custody or control of Defendants, representatives or any other person retained by Defendants.

2.     "Defendants" means Lanix LLC, Kevin Landsverk, and Dylan Dyke.

3.     "Lanix" means Defendant Lanix LLC and all and all predecessors,

subsidiaries, affiliates, and related entities, and any of their officers, directors, employees, agents and representatives.

4.     "Landsverk" refers to Defendant Kevin Landsverk and all affiliated entities, businesses owned in whole or in part by Landsverk, Landsverk's agents, employees, attorneys and other persons acting, or purporting to act, on his behalf or in active concert or participation with him.

5.     "Dyke" refers to Defendant Dylan Dyke and all affiliated entities, businesses owned in whole or in part by Dyke, Dyke's agents, employees, attorneys and other persons acting, or purporting to act, on his behalf or in active concert or participation with him, including but not limited to any employees, current or former, of Corval Group, Inc.

6.     "You" or "Your" refers to Defendants, and each of them.

7.     "Plaintiff," "Integrated Process Solutions, Inc.," "IPS," or "the Company" refers to Plaintiff Integrated Process Solutions, Inc. and all predecessors, subsidiaries, affiliates, and related entities, and any of their officers, directors, employees, agents and representatives.

8.     "Identify" means, with respect to a natural person, to set forth that person's full name and, on the first occasion that such person is identified, the following information:

(a)     Present or last known residence, business addresses and home and business telephone numbers; and

(b)     Present or last known employer and job title.

3

9. "Identify" and "Identity" when used with respect to a corporation, business organization, or entity other than a natural person, mean to state the full name of such entity, the address of its principal place of business, and the name, position and telephone number of your primary contact person.

10. "Identify" and "Identity" when used with reference to a document or other tangible item, mean (regardless of whether any claim of privilege is asserted) to state the following information:

(a) Its character or nature (e.g., letter, memorandum, report, etc.);

(b) The date it bears or, if undated, the date it was written or created;

(c) The identity of the person(s) who wrote or created it;

(d) The identity of the person(s) who received it;

(e) Its file number or other identifying mark or code;

(f) Its general subject matter and a summary of its contents;

(g) Its present or last known location or custodian; and

(h) The identity of the person(s) who can authenticate or identify it.

If any document was, but no longer is, in your possession, custody or control, state whether it has been lost, destroyed, transferred or otherwise disposed of, or is missing, and in each instance explain the circumstances surrounding the disposition thereof and the date it occurred.

11. "Identify" and "Identity" mean, with respect to an oral communication or other event, to set forth the following information:

(a)     Its substance;

(b)     The date it occurred and the time;

(c)     The place it occurred and, if different (as with a telephone communication), the place it was received;

(d)     For a communication, the identity of each originator and recipient, and for an event, the identity of each participant; and

(e)     The identities of all persons present when the communication or event occurred.

12.     "Relates to" and "relating to" mean evidences, reflects, constitutes, refers to, contradicts, supports, or in any other way is logically or factually connected to the matter discussed.

13.     "Person" means any natural person, and any business or governmental entity, association, or organization, and any division, department, affiliate, or subsidiary thereof.

14.     "Communication" means any transmission of words or thoughts between or among two or more persons, whether written, oral, or electronic.

15.     "Date" means the exact day, month, and year if ascertainable; if not, the closest approximation that can be made thereto by means of relationship to other events, locations, or matters.

16.     The singular form of a word shall refer to the plural and words used in the masculine gender shall also include the feminine and vice-versa.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify each person with knowledge or who claims to have knowledge relating to any of the issues or defenses in this case and with respect to each such person state what knowledge that person has or claims to have.

**INTERROGATORY NO. 2:** Identify any admission or declaration against interest that you claim or believe was made by any person regarding any issue in this case.

**INTERROGATORY NO. 3:** If you do not admit any allegation in IPS's Complaint, then with respect to each allegation you do not admit:

    (a)    state all facts, circumstances, and/or reasons for your failure to admit such allegation;

    (b)    identify all persons with knowledge or who claim to have knowledge relating to such allegation and/or your failure to admit it and state the knowledge such person possesses;

    (c)    identify all documents relating to such allegation and/or your failure to admit it; and

    (d)    identify any communication, written or oral, you have had with any person relating to such allegation and/or your failure to admit it.

**INTERROGATORY NO. 4:** Identify all personal computers, computing tablets, computing notebooks, laptops, cell phones, smart phones, external hard drives, flash drives, electronic data storage devices, and any other electronic devices or devices containing flash memory capabilities in Landsverk's or Dyke's possession, custody, or control, or that Landsverk or Dyke has used since September 1, 2018. For each such device, identify the current operating system (if any) and present location.

**INTERROGATORY NO. 5:** Identify all documents or tangible things that

mention or contain the name IPS or that came from any IPS source, server, file, or employee, and identify the date, location, and the circumstances of your coming into possession, custody, or control of such document(s).

**INTERROGATORY NO. 6:** Identify any customers or prospective customers whose business you have solicited, directly or indirectly, at any time from November 1, 2018 through the present and for each state whether you approached that customer or prospective in your capacity as an agent of IPS, Lanix, or otherwise.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:** All documents that constitute, reflect, refer, or relate to IPS, or its business, including, without limitation, any documents concerning or relating to IPS's employees, customers, prospective customers, products, services, or any other aspect of its business.

**REQUEST NO. 2:** All documents that constitute, reflect, refer, or relate to your use of IPS's confidential, proprietary, and/or trade secret information.

**REQUEST NO. 3:** All documents that constitute, reflect, refer, or relate to your disclosure to any person or entity of IPS's confidential, proprietary, and/or trade secret information.

**REQUEST NO. 4:** Any and all documents or information you have used to bid or compete for, request, solicit, whether directly or indirectly, any work from persons whom you know were or are customers or prospective customers of IPS at any time from November 1, 2018 through the present.

**REQUEST NO. 5:** Forensic images of all personal computers, computing tablets,

7

computing notebooks, laptops, cell phones, smart phones, external hard drives, flash drives, electronic data storage devices, and any other electronic devices or devices containing flash memory capabilities in Landsverk's or Dyke's possession, custody, or control, or that Landsverk or Dyke has used since September 1, 2018.

**REQUEST NO. 6:** All documents that you referred to, identified, or used in any way in answering IPS's Interrogatories or the preceding Requests.

NILAN JOHNSON LEWIS PA

Dated: March 7, 2019          By: _____
                                Joel O'Malley (Reg. No. 0352573)
                                Pablo Orozco (Reg. No. 0396811)
                                120 South Sixth Street, Suite 400
                                Minneapolis, MN 55402
                                Phone: 612-305-7500
                                Fax: 612-305-7501
                                jomalley@nilanjohnson.com
                                porozco@nilanjohnson.com

                                ATTORNEYS FOR PLAINTIFF

# EXHIBIT B



120 SOUTH SIXTH STREET • SUITE 400
MINNEAPOLIS • MN 55402
P 612 305 7500 F 612 305 7501

Joel O'Malley
Direct Dial: (612) 305-7747
Email: jomalley@nilanjohnson.com

February 27, 2019

<u>**--VIA OVERNIGHT AND EMAIL DELIVERY--**</u>
*KLandsverk@gmail.com*

Kevin Landsverk
40702 300th Ave SE
Fosston, MN 56542

Re:    Integrated Process Solutions, Inc. and Lanix, LLC

Dear Mr. Landsverk:

This firm represents Integrated Process Solutions, Inc. ("IPS" or the "Company"). The purpose of this letter is to address the wrongful actions you took during your prior employment with IPS, and that you are continuing to take in connection with your new business, Lanix LLC ("Lanix"). I am not aware that you are represented by legal counsel; if you are, please forward this letter to him/her immediately. Please direct all future communications (or have your attorney direct all such communications) to me.

I have reviewed, and continue to investigate, your conduct in light of your obligations to IPS. Based on the review to date, it is clear you are in violation of numerous statutory and common law duties to IPS. Frankly, the magnitude of your illegal disloyalty and misappropriation of IPS's property is shocking. Through this letter, IPS demands immediate actions by you, described in this letter, to remedy your misconduct.

**Misappropriation of Confidential and Trade Secret Information**

Minnesota law also protects a Company's proprietary and confidential information. Misappropriation is the improper acquisition, disclosure or use of confidential information under the Minnesota version of the Uniform Trade Secret Act. Minn. Stat. § 325C.01, subd. 3. A proven violation of this statute could result in an order from the court that you cease acting in violation of the law ("injunctive relief"), damages, and recovery of the costs and attorney's fees of bringing such an action. In addition, Minnesota common law provides a cause of action for breach of the duty of confidentiality. That cause of action covers much of the same information as the trade secrets statute.



You are also obligated to comply with the federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1831, *et seq*. Under this federal law, IPS could pursue a trade secret misappropriation claim, as the DTSA creates a private cause of action in favor of the "owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The federal district courts have original jurisdiction to hear DTSA claims. *See* 18 U.S.C. § 1836(c).

A trade secret as defined by the DTSA encompasses:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if —

> (A)    the owner thereof has taken reasonable measures to keep such information secret; and

> (B)    the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

IPS has trade secret and proprietary rights to its financial, business, and technical information, as well as its technology and operational processes, methods, and techniques. IPS has begun forensic examination of the electronic devices you used during your IPS employment, and has concrete evidence that you have misappropriated IPS's confidential, propriety, and trade secret information. Just some examples of your apparently wrongdoing include:

- You improperly obtained IPS's confidential financial information, shared that information with people outside of IPS, and used it for your own financial gain.

| | | Example No. 1 | | | |
|---|---|---|---|---|---|
| 2 | To:<br>+16517283436<br>Dyke Dylan | 1/29/2019<br>3:04:23<br>AM(UTC+0) | Outgoing | Sent | Did you get my email sent to your Gmail? |
| 1 | To:<br>+16517283436<br>Dyke Dylan | 1/29/2019<br>3:04:30<br>AM(UTC+0) | Outgoing | Sent | That was that financial interesting document |

- You improperly obtained IPS's confidential CAD files, drawings, project manage files, and all the proprietary information used to create such files for your own financial gain.

| | | | Example No. 2 | | |
|---|---|---|---|---|---|
| 147 | From:<br>+16517283436<br>Dyke Dylan | 1/26/2019<br>10:20:55<br>PM(UTC+0) | Incoming | Read | Step 1: Send price corval needs to pay IPS for lamb Weston for what has been complete with the understanding that there is a high possibility you won't be doing anymore for that job because lamb wants to do own controls<br>Step 1 Note: you will need to be willing to take over as Lanix for whatever is left from what we pay IPS<br>Step 2: 2 week notice IPS<br>Step 3A: get into corvals vendor list<br>Step 3B: possible finish lamb Weston with remaining funds "stealing" IPs drawings<br>Step 3C: As Lanix, send price (to be verbally discussed) for JOTs contherms<br>Step 3D: Take vacation/Etc. Operate as Lanix going to Smithfield |
| 130 | To:<br>+16517283436<br>Dyke Dylan | 1/27/2019<br>9:49:03<br>PM(UTC+0) | Outgoing | Sent | Don't you think getting into the vendor list should be before quitting IPS? |

| | | | Example No. 3 | | |
|---|---|---|---|---|---|
| 1924 | **From:**<br>+16517283436<br>Dyke Dylan | 12/26/2018<br>1:52:50<br>PM(UTC+0) | Incoming | Read | Only for money Harry!!! |
| 1923 | **From:**<br>+16517283436<br>Dyke Dylan | 12/26/2018<br>2:00:16<br>PM(UTC+0) | Incoming | Read | Oh I didn't read it fully, yeah you can send it to Corval!! |
| 1922 | **From:**<br>+16517283436<br>Dyke Dylan | 12/26/2018<br>2:06:39<br>PM(UTC+0) | Incoming | Read | Prolly not up yet.....but need to push that we get the autocad or whatever we did for the coils |

| | | | Example No. 4 | | |
|---|---|---|---|---|---|
| 2136 | **To:**<br>+16517283436<br>Dyke Dylan | 12/21/2018<br>4:59:40<br>AM(UTC+0) | Outgoing | Sent | So go cheaper like Carl or go high dollar like an errin holtberg? |
| 2135 | **To:**<br>+16517283436<br>Dyke Dylan | 12/21/2018<br>5:00:10<br>AM(UTC+0) | Outgoing | Sent | Carl is good for programming which is the main grunt of what we do. |
| 2134 | **From:**<br>+16517283436<br>Dyke Dylan | 12/21/2018<br>5:00:25<br>AM(UTC+0) | Incoming | Read | Fuck if I know dude |
| 2133 | **To:**<br>+16517283436<br>Dyke Dylan | 12/21/2018<br>5:00:32<br>AM(UTC+0) | Outgoing | Sent | I kinda like doing it all myself |
| 2132 | **From:**<br>+16517283436<br>Dyke Dylan | 12/21/2018<br>5:00:39<br>AM(UTC+0) | Incoming | Read | You couldn't do Dold |

| 2131 | **To:** +16517283436 Dyke Dylan | 12/21/2018 5:00:54 AM(UTC+0) | Outgoing | Sent | It gets cleaner and easier to re-use. Yeah dold was way too much |
|---|---|---|---|---|---|
| | | | **Example No. 5** | | |
| 2260 | **To:** +16517283436 Dyke Dylan | 12/19/2018 12:07:00 AM(UTC+0) | Outgoing | Sent | Pete came and asked me about upcoming opportunities. He got all excited and I saw something with the financial guy that he depends on our work now to hit sales numbers |
| 2259 | **To:** +16517283436 Dyke Dylan | 12/19/2018 12:07:44 AM(UTC+0) | Outgoing | Sent | I'll see the exact details of why our work was important in a bit here when I open my computer again. Would be so fun to pull all these opportunities away from him. |
| 2258 | **From:** +16517283436 Dyke Dylan | 12/19/2018 12:09:17 AM(UTC+0) | Incoming | Read | Yeah, that's true but....not sustainable right now lean on his water shit if we don't have shit |

| | | | **Example No. 6** | | |
|---|---|---|---|---|---|
| 2577 | **To:** +16517283436 Dyke Dylan | 12/10/2018 3:05:13 PM(UTC+0) | Outgoing | Sent | k.ipsamerica.biz:8085 |
| 2576 | **From:** +16517283436 Dyke Dylan | 12/10/2018 3:59:42 PM(UTC+0) | Incoming | Read | What's this login? |
| 2575 | **To:** +16517283436 Dyke Dylan | 12/10/2018 4:00:13 PM(UTC+0) | Outgoing | Sent | That's my erp system :) |
| 2574 | **To:** +16517283436 Dyke Dylan | 12/10/2018 4:00:24 PM(UTC+0) | Outgoing | Sent | This one is for my farm to practice on |
| 2573 | **From:** +16517283436 Dyke Dylan | 12/10/2018 4:00:45 PM(UTC+0) | Incoming | Read | Well I have no user or password? |
| 2572 | **To:** +16517283436 Dyke Dylan | 12/10/2018 4:02:55 PM(UTC+0) | Outgoing | Sent | Oh I was just showing that off a little. Not much data in it yet |

- You established and maintained a server at your home for the purpose of copying and/or backing up all of IPS's information, including confidential data, systems, and databases. You then improperly used that access to gather confidential data, systems, and databases for your own financial gain.

| | | | **Example No. 7** | | |
|---|---|---|---|---|---|
| 1421 | **From:** +16517283436 Dyke Dylan | 1/6/2019 1:19:04 AM(UTC+0) | Incoming | Read | That's 16 week lead time on equip, how fast can you make a coupa panels? |
| 1420 | **To:** +16517283436 Dyke Dylan | 1/6/2019 1:20:47 AM(UTC+0) | Outgoing | Sent | A small panel can be turned around in 3 weeks typically. |

| 1419 | From:<br>+16517283436<br>Dyke Dylan | 1/6/2019<br>1:24:12<br>AM(UTC+0) | Incoming | Read | SSHE job 6 of them only gotta add product pressure with VfD control |
| 1417 | To:<br>+16517283436<br>Dyke Dylan | 1/6/2019<br>1:25:18<br>AM(UTC+0) | Outgoing | Sent | So we'd have a few to chew on for sure. Big bellisio would be a blessing of course |
| 1416 | From:<br>+16517283436<br>Dyke Dylan | 1/6/2019<br>1:26:01<br>AM(UTC+0) | Incoming | Read | Yeah it can be two panels or two screens |
| 1414 | To:<br>+16517283436<br>Dyke Dylan | 1/6/2019<br>1:27:33<br>AM(UTC+0) | Outgoing | Sent | Sounds fun |
| 1413 | To:<br>+16517283436<br>Dyke Dylan | 1/6/2019<br>1:27:38<br>AM(UTC+0) | Outgoing | Sent | And fucking easy |
| 1412 | To:<br>+16517283436<br>Dyke Dylan | 1/6/2019<br>1:27:44<br>AM(UTC+0) | Outgoing | Sent | Since it all DONE |
| 1410 | From:<br>+16517283436<br>Dyke Dylan | 1/6/2019<br>1:27:57<br>AM(UTC+0) | Incoming | Read | If you can get the info? |
| 1409 | From:<br>+16517283436<br>Dyke Dylan | 1/6/2019<br>1:28:03<br>AM(UTC+0) | Incoming | Read | Better start that transfer? |
| 1406 | To:<br>+16517283436<br>Dyke Dylan | 1/6/2019<br>1:28:19<br>AM(UTC+0) | Outgoing | Sent | Come on |
| 1405 | To:<br>+16517283436<br>Dyke Dylan | 1/6/2019<br>1:28:44<br>AM(UTC+0) | Outgoing | Sent | I have a daily sync of the entire IPS server being sent to my house |
| 1404 | To:<br>+16517283436<br>Dyke Dylan | 1/6/2019<br>1:28:54<br>AM(UTC+0) | Outgoing | Sent | It's actually an hourly sync I think |
| 1403 | To:<br>+16517283436<br>Dyke Dylan | 1/6/2019<br>1:30:06<br>AM(UTC+0) | Outgoing | Sent | And will leave myself several routes to get back into the company if needed. |

*Accordingly, IPS demands that you immediately return to IPS all hard copy documents containing IPS's information; return all and electronic data, documents, and communications related to IPS that are located on any electronic computing or storage device in your possession, custody, and control; return to IPS any server in your possession, custody, and control containing IPS information; and provide to IPS for forensic examination all computing devices in your possession, custody, or control that may contain IPS's information. IPS also demands, and expects, that you will reimburse IPS for the costs it is incurring to forensically examine your devices, and any additional such costs to forensically examine and remediate your personal devices.*

**<u>Duty of Loyalty</u>**

In addition to your obligations described above, you have a common law duty of loyalty to IPS. Employees have a "common law duty not to wrongfully use confidential information or trade secrets obtained from an employer." *Northwest Airlines v. American Airlines*, 853 F. Supp. 1110, 1117-18 (D. Minn. 1994). Moreover, under Minnesota law, all employees are subject to a fiduciary duty of loyalty to employers, which prohibits them from soliciting existing customers of the employer—whether for a competitor or a business the employee plans to set up—or otherwise competing against the employer while still employed. *Rehabilitation Specialists, Inc. v. Koering*, 404 N.W.2d 301 (Minn. Ct. App. 1987). As explained by the Minnesota Supreme Court, an employee may not "feather his own nest at the expense of his employer while he is still on the payroll." *Sanitary Farm Dairies v. Wolf*, 261 Minn. 166 (Minn. 1961).

Our investigation has already uncovered serious and repeated violations by you of your duty of loyalty to IPS. Among other things:

- You withheld potential projects from IPS in order to direct those opportunities to the your soon-to-be-formed company, Lanix, LLC.

| | | | | | Example No. 8 |
|---|---|---|---|---|---|
| 156 | From:<br>+16517283436<br>Dyke Dylan | 1/26/2019<br>7:19:34<br>PM(UTC+0) | Incoming | Read | We will tell IPs that lamb is doing own controls<br>Which i need a what you've spent email so we could tell lamb so possible cancel it anyway?<br>But the ultimate shit is if it's canceled canceled you would only have contherms |
| 157 | To:<br>+16517283436<br>Dyke Dylan | 1/26/2019<br>7:18:48<br>PM(UTC+0) | Outgoing | Sent | Yeah for sure |
| 158 | From:<br>+16517283436<br>Dyke Dylan | 1/26/2019<br>7:18:34<br>PM(UTC+0) | Incoming | Read | Turkey contherm set you up by yourself for a few months I'd think? |
| 159 | From:<br>+16517283436<br>Dyke Dylan | 1/26/2019<br>7:18:15<br>PM(UTC+0) | Incoming | Read | At Lanix I mean |
| 160 | From:<br>+16517283436<br>Dyke Dylan | 1/26/2019<br>7:18:10<br>PM(UTC+0) | Incoming | Read | Would have to steal drawings and be ok with not making too much |
| 161 | From:<br>+16517283436<br>Dyke Dylan | 1/26/2019<br>7:17:45<br>PM(UTC+0) | Incoming | Read | Ok well how much does IPs have invested in lamb Weston?<br>Why can't we just pay what we owe cancel rest PO and then you take it as Lanix? |

| | | | | | Example No. 9 |
|---|---|---|---|---|---|
| 294 | To:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>1:24:11<br>AM(UTC+0) | Outgoing | Sent | Yeah seemed that way. Mark must have got some positive feedback from Jamie I'm guessing.  And I never had to be onsite at all for that. Thanks for setting that up dude! |
| 293 | From:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>1:24:49<br>AM(UTC+0) | Incoming | Read | Your welcome, just hope....we can get more than a little sshe panel there now.....sure they considering options now |

| 292 | To:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>1:25:15<br>AM(UTC+0) | Outgoing | Sent | Fingers crossed |
|---|---|---|---|---|---|
| 291 | To:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>1:39:11<br>AM(UTC+0) | Outgoing | Sent | Did you get Sterling eggs then???? |

| | | | Example No. 10 | | |
|---|---|---|---|---|---|
| 284 | From:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>2:46:35<br>AM(UTC+0) | Incoming | Read | Just want lamb to approve damn thing so you can get done |
| 283 | From:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>2:46:46<br>AM(UTC+0) | Incoming | Read | Get Lanix, start with contherms |
| 282 | From:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>2:46:52<br>AM(UTC+0) | Incoming | Read | Maybe get Sterling? |
| 281 | To:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>2:47:07<br>AM(UTC+0) | Outgoing | Sent | Sterling would be such a blessing |
| 280 | To:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>2:47:10<br>AM(UTC+0) | Outgoing | Sent | Perfect first job |
| 279 | To:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>2:47:16<br>AM(UTC+0) | Outgoing | Sent | Second |
| 278 | From:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>2:47:17<br>AM(UTC+0) | Incoming | Read | Contherms first job |
| 277 | To:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>2:47:19<br>AM(UTC+0) | Outgoing | Sent | Whatever :) |
| 276 | From:<br>+16517283436<br>Dyke Dylan | 1/22/2019<br>2:47:22<br>AM(UTC+0) | Incoming | Read | Waiting for Lanix..... |

| | | | Example No. 11 | | |
|---|---|---|---|---|---|
| 1204 | **From:**<br>+16517283436<br>Dyke Dylan | 1/7/2019<br>3:05:35<br>AM(UTC+0) | Incoming | Read | People gonna call that # all the time |
| 1203 | **To:**<br>+16517283436<br>Dyke Dylan | 1/7/2019<br>3:06:00<br>AM(UTC+0) | Outgoing | Sent | Yeah probably, but right now it's only Hormel. That literally it who calls me. |
| 1202 | **From:**<br>+16517283436<br>Dyke Dylan | 1/7/2019<br>3:13:45<br>AM(UTC+0) | Incoming | Read | Can't fuck us with lamb |
| 1201 | **To:**<br>+16517283436<br>Dyke Dylan | 1/7/2019<br>3:14:14<br>AM(UTC+0) | Outgoing | Sent | Uuuuugh, well tell me how I should handle it? |

| 1200 | From:<br>+16517283436<br>Dyke Dylan | 1/7/2019<br>3:14:48<br>AM(UTC+0) | Incoming | Read | I'll hold all other POs to IPs, you can work on those on your own before POs at Lanix |
| 1199 | To:<br>+16517283436<br>Dyke Dylan | 1/7/2019<br>3:15:20<br>AM(UTC+0) | Outgoing | Sent | Ok, that gives me more time to setup company too then |
| 1198 | From:<br>+16517283436<br>Dyke Dylan | 1/7/2019<br>3:15:37<br>AM(UTC+0) | Incoming | Read | Easily tell Pete bellisio not send corval po yet |
| 1197 | To:<br>+16517283436<br>Dyke Dylan | 1/7/2019<br>3:16:27<br>AM(UTC+0) | Outgoing | Sent | Right |

| | | | | Example No. 12 | |
|---|---|---|---|---|---|
| 1867 | To:<br>+16517283436<br>Dyke Dylan | 12/28/2018<br>11:52:34<br>PM(UTC+0) | Outgoing | Sent | Well I can only get excited about new company working on your stuff. IPS holding us both back |
| 1866 | To:<br>+16517283436<br>Dyke Dylan | 12/28/2018<br>11:53:09<br>PM(UTC+0) | Outgoing | Sent | Oh u suppose you've got an mcc involved on this one? |
| 1865 | To:<br>+16517283436<br>Dyke Dylan | 12/28/2018<br>11:53:11<br>PM(UTC+0) | Outgoing | Sent | Nice :) |
| 1864 | To:<br>+16517283436<br>Dyke Dylan | 12/28/2018<br>11:53:15<br>PM(UTC+0) | Outgoing | Sent | I* |
| 1863 | To:<br>+16517283436<br>Dyke Dylan | 12/28/2018<br>11:53:33<br>PM(UTC+0) | Outgoing | Sent | Fuck...I need to quote that. |
| 1862 | From:<br>+16517283436<br>Dyke Dylan | 12/28/2018<br>11:53:52<br>PM(UTC+0) | Incoming | Read | Weee! What you think of comps? |
| 1861 | To:<br>+16517283436<br>Dyke Dylan | 12/28/2018<br>11:54:58<br>PM(UTC+0) | Outgoing | Sent | Oh I didn't register that I'd be powering them |
| 1860 | To:<br>+16517283436<br>Dyke Dylan | 12/28/2018<br>11:55:00<br>PM(UTC+0) | Outgoing | Sent | Nice!!! |
| 1859 | To:<br>+16517283436<br>Dyke Dylan | 12/28/2018<br>11:55:31<br>PM(UTC+0) | Outgoing | Sent | Fuuuuck. Dude we gotta do this one ourselves. Could pocket like 10g each on top of fair profit |
| 1858 | To:<br>+16517283436<br>Dyke Dylan | 12/28/2018<br>11:55:38<br>PM(UTC+0) | Outgoing | Sent | Oh what could be... |
| 1857 | From:<br>+16517283436<br>Dyke Dylan | 12/29/2018<br>12:11:43<br>AM(UTC+0) | Incoming | Read | Meh don't get to greedy |
| 1856 | To:<br>+16517283436<br>Dyke Dylan | 12/29/2018<br>12:13:10<br>AM(UTC+0) | Outgoing | Sent | Just sick of seeing the money go to waste. No bonus again this year. |

- You and Dylan Dyke appear to have entered into a "kick back" agreement, whereby you would provide him a monetary reward in exchange for him directing work to Lanix rather than to IPS.

| Example No. 13 | | | | | |
|---|---|---|---|---|---|
| 1127 | To:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:47:44<br>AM(UTC+0) | Outgoing | Sent | Ha! You'll get something. Early on with me! |
| 1126 | From:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:50:19<br>AM(UTC+0) | Incoming | Read | 12.5% profit of jobs over 50k |
| 1125 | From:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:51:11<br>AM(UTC+0) | Incoming | Read | Nothing on jobs under 50k |
| 1124 | From:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:51:28<br>AM(UTC+0) | Incoming | Read | Negotiated per job after 500k |
| 1122 | To:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:51:50<br>AM(UTC+0) | Outgoing | Sent | Now come the terms! |
| 1119 | From:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:52:20<br>AM(UTC+0) | Incoming | Read | Gotta be worth it for you |
| 1118 | From:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:53:10<br>AM(UTC+0) | Incoming | Read | No? |
| 1116 | To:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:54:35<br>AM(UTC+0) | Outgoing | Sent | This seems like a conversation over a big meal face to face no? |
| 1115 | From:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:54:58<br>AM(UTC+0) | Incoming | Read | On a 50k job be 25% profit or 12500, so my "cut" be like 1500 |
| 1114 | To:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:55:01<br>AM(UTC+0) | Outgoing | Sent | I'm pretty open to ideas |
| 1113 | From:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:56:01<br>AM(UTC+0) | Incoming | Read | Yeah just throwing it out there |
| 1112 | To:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:56:46<br>AM(UTC+0) | Outgoing | Sent | Yeah that seems reasonable |
| 1111 | From:<br>+16517283436<br>Dyke Dylan | 1/8/2019<br>12:57:19<br>AM(UTC+0) | Incoming | Read | And as your company grows and "we" get known then maybe I become partner |

- You used your special status as an employee with intimate knowledge of IPS's information IT systems, including hardware, software, and data repositories, including databases, to access IPS's confidential and trade secret information for your own personal gain. *See* Examples Nos. 6 and 7, above.

- At all relevant times you had full knowledge that your actions were wrongful and would expose you to legal liability.

| | | | Example No. 14 | | | |
|---|---|---|---|---|---|---|
| 505 | **To:** +16517283436 Dyke Dylan | 1/17/2019 1:20:57 AM(UTC+0) | Outgoing | Sent | Yeah. I wonder if I am infecting others to think less of IPS? |
| 504 | **From:** +16517283436 Dyke Dylan | 1/17/2019 1:21:04 AM(UTC+0) | Incoming | Read | Duh |
| 503 | **From:** +16517283436 Dyke Dylan | 1/17/2019 1:21:12 AM(UTC+0) | Incoming | Read | Bad attitude is a plague |
| 502 | **To:** +16517283436 Dyke Dylan | 1/17/2019 1:21:36 AM(UTC+0) | Outgoing | Sent | Well I got bitter from lies |

| | | | Example No. 15 | | | |
|---|---|---|---|---|---|---|
| 982 | **To:** +16517283436 Dyke Dylan | 1/11/2019 2:52:55 AM(UTC+0) | Outgoing | Sent | Yeah that's pretty good. Should I feel bad for leaving or not? Or for stealing 2 people? |

| | | | Example No. 16 | | | |
|---|---|---|---|---|---|---|
| 1351 | **From:** +16517283436 Dyke Dylan | 1/6/2019 2:35:47 AM(UTC+0) | Incoming | Read | Lori gonna convince Pete to sue you |
| 1349 | **To:** +16517283436 Dyke Dylan | 1/6/2019 2:36:05 AM(UTC+0) | Outgoing | Sent | Yeah maybe |
| 1348 | **To:** +16517283436 Dyke Dylan | 1/6/2019 2:36:08 AM(UTC+0) | Outgoing | Sent | Would suck |
| 1346 | **From:** +16517283436 Dyke Dylan | 1/6/2019 2:36:56 AM(UTC+0) | Incoming | Read | Perty wortied |
| 1345 | **From:** +16517283436 Dyke Dylan | 1/6/2019 2:36:57 AM(UTC+0) | Incoming | Read | Worried |
| 1344 | **From:** +16517283436 Dyke Dylan | 1/6/2019 2:37:51 AM(UTC+0) | Incoming | Read | No work g.o.o.b. |
| 1343 | **From:** +16517283436 Dyke Dylan | 1/6/2019 2:38:24 AM(UTC+0) | Incoming | Read | Eeeeeek man....just hate business plan rely on me at corval |
| 1342 | **To:** +16517283436 Dyke Dylan | 1/6/2019 2:38:39 AM(UTC+0) | Outgoing | Sent | Well yeah |
| 1341 | **To:** +16517283436 Dyke Dylan | 1/6/2019 2:39:36 AM(UTC+0) | Outgoing | Sent | Agree, but that's the only way to serve you guys properly is when we dedicated and that makes incentive for you guys to use us so you get what |

> you want and can work with us on pricing to put
> you where you need to be at to win the job

It is abundantly clear that you began competing with IPS during your employment at IPS, and that you knew it was wrong. Investigation is continuing, as IPS suspects you may have failed to present additional business opportunities that should have been provided to IPS, as part of your scheme to funnel such opportunities to Lanix.

***Accordingly, IPS demands that you immediately return to IPS all wages paid to you during the period of your disloyalty—our investigation suggests that date was as early as November 2018; and pay to IPS any compensation you and/or Lanix have received as a result of your improperly diverting business away from IPS for your own benefit.***

### Tortious Interference with Contract and with Prospective Economic Relations

Minnesota law protects contractual relationships between an entity and a third-party. Tortious interference with contract occurs when a third party interferes or tries to interfere with a contractual relationship between two parties. To establish a tortious interference claim, an aggrieved party must prove: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356 (Minn. 1998); *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn.1994). In *Kallok*, the Minnesota Supreme Court expansively held that damages may be recovered for "all harm, past, present, and prospective, legally caused by the tort."

Tortious interference with business or contractual relationships can involve either present or prospective relations. *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 632 (Minn. 1982). In a claim for tortious interference with business relationships (e.g., business relationships with clients and potential clients), liability extends to those outside of the business/contractual relationship. *Jensen v. Lundorff*, 103 N.W.2d 887, 890 (1960). When a company suffers injury on account of another's intentional interference with a business relationship from which a legally enforceable benefit flows to the injured person, that injured person has a right of action against the interferer.

As discussed above, IPS has evidence that you were interfering with IPS's customer relationships and diverting business from those customers to your own future company. These are clear acts of tortious interference, for which you are liable.

### Conclusion

The evidence noted herein, as well as other evidence, shows that during your IPS employment you engaged in a scheme to steal IPS's confidential and trade secret information for use at your new company, Lanix; to retain the ability to continue stealing information from IPS; and to divert business from IPS to Lanix.

IPS takes its business, confidential and proprietary property and information very seriously and will seek redress through all available remedies at law, including but not limited to seeking

injunctive relief and compensatory and punitive damages, together with the recovery of attorneys' fees and costs incurred in seeking such redress. The claims for damages will include, at the very least, (1) disgorgement of compensation paid by IPS to you while you were employed by IPS and breaching his obligations to IPS; (2) payment of any compensation earned by you and/or Lanix resulting from your misappropriation and diverting IPS's business; (3) payment of the forensic costs IPS has incurred to investigate and remediate your bad acts; and (4) payment of IPS's attorneys' fees incurred in connection with this matter.

This letter also provides you notice that you, and anyone acting on your behalf, have an obligation to preserve all things, equipment and documents, including electronically stored information relating to this matter and or the assertions recited in this letter. You also have an obligation not suspend or otherwise prevent any automatic or systematic deletion of electronic files (including emails and text messages), inasmuch as those files may be related to this dispute. Failure to comply with this evidence preservation directive can have serious legal consequences, which you should discuss with your own legal counsel.

Finally, in addition to the demands interlineated above, *I am writing to demand that you immediately cease and desist , by yourself and through Lanix, any and all competitive activities against IPS.* It is clear that the entire operation of Lanix is the result of illegal acts by you. Those competitive activities may resume, if at all, only after IPS has received adequate responses and payments in response to its demands, and written assurance, signed under penalty of perjury, that you will abide fully and completely with your obligations to IPS.

IPS would prefer to avoid legal action, if possible, but that is dependent upon your actions. *Therefore, please respond to this letter no later than 5:00 p.m. Central time on Monday, March 4, 2019.*

If I do not hear from you by that time, if your response is unsatisfactory, or if IPS discovers any continued or further breaches of any duties imposed upon you as a matter of statutory or common law, IPS will proceed, without further notice, to commence an action against you and any other persons or entities who may be acting in concert with you, to protect itself and enforce its rights. In any such action, IPS will seek both injunctive relief and monetary damages, and will seek to recover all expenses, including forensics and attorneys' fees and costs, incurred in protecting its interests.

I look forward to your timely response.

Regards,

Joel O'Malley

# EXHIBIT C

**MORRISON SUND** PLLC
—— ATTORNEYS AT LAW ——

SUITE 200
5125 COUNTY ROAD 101
MINNETONKA, MINNESOTA 55345
TEL: (952) 975-0050
FAX: (952) 975-0058
www.morrisonsund.com

*Writer's Direct Dial: 952.277.0146*
*spay:ant@morrisonsund.com*

March 6, 2019

Joel O'Malley                                              *VIA EMAIL & U.S. MAIL*
nilan johnson lewis PA
120 South Sixth Street, Suite 400
Minneapolis MN 55402

Re: Integrated Process Solutions, Inc. and Lanix, LLC

Dear Mr. O'Malley:

As you are aware, Kevin Landsverk has retained Morrison Sund PLLC to represent him with regard to the allegations set forth in your letter dated February 27, 2019. Please direct future communications regarding this matter to me.

*First*, Mr. Landsverk did not "misappropriate" any Integrated Process Solutions, Inc. ("IPS") confidential or trade secret information. During his employment with IPS, Mr. Landsverk provided "backup server" services to IPS from his home. This "backup server" was in operation for more than 3 years; and, when he gave his notice that he was terminating his employment, IPS initially wanted Mr. Landsverk to continue providing this backup server service. Mr. Landsverk never copied data from the backup server for his own personal use.

When IPS told Mr. Landsverk that it did not want him to continue the backup server service, Mr. Landsverk took all hard drives used for the backup server off line and preserved them. These hard drives have been sitting in a box waiting collection by IPS. Mr. Landsverk told IPS this multiple times, including in his letter of resignation, and another time via a phone call to Pete Nelson in which he offered to have IPS' new IT company come to his home and oversee the data erasure. IPS did not accept the offer, has never made arrangements to pick up the hard drives, and has not otherwise instructed Mr. Landsverk as to what it would like done with the hard drives.

In a recent e-mail to me, you stated: "IPS is missing certain usernames and passwords that were created and/or maintained by Mr. Landsverk. As soon as possible, I need a list from your client of all username and passwords for all KVMs, or confirmation of what he believes they should be." Mr. Landsverk texted all the administrative passwords for the IPS domain controller to Pete when he was told by IPS they did not want him to provide backup server services. Nevertheless, I have attached Exhibit 1 which includes the information he has.



*Second*, with regard to the "examples" of texts between Mr. Landsverk and Dylan Dyke referred to in your letter, I do not believe it would be productive to go through each and every one at this point in time. What is important to the issue at hand is that Mr. Dyke is a personal friend of Mr. Landsverk. Indeed, it was that relationship that allowed Mr. Landsverk to bring Corval to IPS as a customer. The text messages back and forth between Mr. Landsverk and Mr. Dyke are two friends talking. Mr. Landsverk was unhappy with his job at IPS in large part because IPS did not appear to value his work and failed to give him raises, bonuses and commissions he had been promised. The reality is that, contrary to your interpretation of the texts, Mr. Landsverk never took any competitive action against IPS while an employee and did not use or disclose IPS information outside the normal course and scope of his employment.

*Third*, to prevail on a claim under the Uniform Trade Secrets Act, Minn. Stat. §§ 325C.01–.08 (2014), IPS must show both the existence and misappropriation of a trade secret. *Electro–Craft Corp. v. Controlled Motion, Inc.,* 332 N.W.2d 890, 897 (Minn.1983). The act defines a trade secret as information that (1) is not generally known or readily ascertainable; (2) derives independent economic value from secrecy; and (3) is the subject of efforts that are reasonable under the circumstances to maintain secrecy. Minn. Stat. § 325C.01, subd. 5(i), (ii); *Electro–Craft Corp.,* 332 N.W.2d at 899–901. If an employee acquires a trade secret without express notice that it is a trade secret, then the employee must know or have reason to know that the owner expects secrecy. Minn. Stat. § 325C.01, subd. 5.

IPS cannot show that any information Mr. Landsverk had access to meets the definition of a trade secret. Customer information like customer-lead lists are generally not trade secrets. *See Blackburn, Nickels & Smith, Inc. v. Erickson,* 366 N .W.2d 640, 645 (Minn.App.1985) (holding that a customer list did not constitute a trade secret because "[i]t could be easily duplicated from public sources"), *review denied* (Minn. June 24, 1985). The information contained in customer-lead lists is often "readily ascertainable by proper means" over the course of time without efforts beyond those ordinarily exerted by salesmen in developing customers." *Fleming Sales Co. v. Bailey,* 611 F.Supp. 507, 514 (N.D.Ill.1985). Moreover, to the extent that information might be considered a trade secret, IPS did not take reasonable steps to protect it. For example, it did not mark the information confidential or require employees like Mr. Landsverk to sign a form of Confidentiality or Non-compete Agreement. Most importantly, Mr. Landsverk did not "misappropriate" or disclose any such information.

*Fourth*, Mr. Landsverk performed his job duties through his last day of employment. While he thought of leaving and starting a new company, he did not decide to do so until he gave his notice. Thinking of starting a new company is not a breach of any duty of loyalty. Following his notice, Mr. Landsverk completed any open projects he was working on at IPS.

*Finally*, Mr. Landsverk did not start working with Corval until at least two weeks after his date of termination. He has no non-compete that would preclude him from working with Corval. In addition, he did not, and has not, used any IPS information in relation to his new company or his work for Corval. Indeed, the Enterprise Resource Planning software used to provide the services he is providing is open source; and the other programing tools are publically available for purchase.


For these reasons, Mr. Landsverk has not misappropriated any trade secrets or breached any duty of loyalty. However, he would like to allay any concerns that IPS has and avoid any further dispute. To that end, Mr. Landsverk:

1. Will deliver the hard drives used for the backup server to whomever IPS directs him to deliver them to;
2. Has provided me with the usernames and passwords he is aware of, which are attached here to as Exhibit "1;"
3. Provides the following assurances:

   a. He never copied data from the backup server and has no copies of any such data other than the hard drives he has agreed to return;
   b. He has not used any IPS information for competitive purposes or otherwise; and
   c. While he intends to keep working with Corval, he will not solicit any other IPS customer to provide the same or similar services IPS provides for a period of one year.

Please contact me to discuss any questions you may have and to let me know where to have the hard drives delivered.

Very truly yours,

**MORRISON SUND PLLC**

Scott Payzant

SSP:sms
Enclosure

# EXHIBIT D

| | |
|---|---|
| **From:** | Joel O'Malley |
| **Sent:** | Thursday, March 7, 2019 1:46 PM |
| **To:** | Scott Payzant; ddyke@corvalgroup.com |
| **Cc:** | Pablo Orozco; Kris Bailey |
| **Subject:** | Integrated Process Solutions v. Lanix LLC et al. |
| **Attachments:** | IPS.zip |

**Importance:** High

Messrs. Payzant and Dyke,

Attached you will find documents that are being filed today in Minnesota federal court to initiate a lawsuit by Integrated Process Solutions against Lanix LLC, Kevin Landsverk, and Dylan Dyke. Along with the Complaint, we are filing a motion for temporary restraining order. A process server also will be attempting service today.

Once a District Court Judge is assigned, I will be contacting chambers to request a ruling and/or immediate hearing (telephonic or in-person) on IPS's motion. While I believe a TRO may issue without notice to Defendants given the showing of immediate and irreparable damage absent an order, I am sending this email to comply with Federal Rule of Civil Procedure 65.

If you wish to participate in any hearing the Court may request, please let me know.

Mr. Dyke: I am not aware you are represented by counsel. If you are, please forward this email to that counsel immediately.

Regards,
Joel

**JOEL O'MALLEY**
*Attorney*
Licensed in MN, CA, and OR

120 South Sixth Street | Suite 400 | Minneapolis · MN 55402
490 43rd Street | Oakland · CA 94609
P 612.305.7747 | C 612.242.1656 | F 612.305.7501
www.nilanjohnson.com



nilan
johnson
lewis ₚₐ

1